IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Ahmad Poole (K-95348), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 C 0014 |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| E. Aguinaldo, Jr., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff has paid the filing fee [16]. Plaintiff's motion to vacate the Court's July 10, 2020 dismissal order [15] is granted. The Court's July 10, 2020 dismissal order is vacated, and the Clerk is directed to reinstate the case. The complaint [1] is dismissed without prejudice. Plaintiff's motion for attorney representation [4], which was terminated as moot when the case was dismissed, is reinstated and is granted. The Court requests that attorney Jonathan I. Loevy, Loevy & Loevy, 311 N. Aberdeen 3rd FL Chicago, 60607 IL, (312) 243-5900, jon@loevy.com represent Plaintiff in this case in accordance with counsel's trial bar obligations under the Local Rules. Recruited counsel shall file an appearance and amended complaint no later than _10-1-20_ _____, 2020. If counsel believes that filing an amended complaint would be inconsistent with his Rule 11 obligations, he should so inform the Court by the aforementioned date. Recruited counsel falls within the class of users listed in the Electronic Public Access fee schedule adopted by the Judicial Conference of the United States, therefore, counsel shall be exempt from the payment of fees for access via PACER to the electronic case files maintained in this court for the above-captioned case only. Recruited counsel is directed to open a separate PACER account to only be used for the above-captioned case, and fees are exempt for the above-captioned case only; he shall not be exempt from the payment of fees incurred in connection with other uses of the PACER system in this court. This exemption is valid immediately and for the duration of counsel's participation in the matter. This exemption may be revoked at the discretion of the Court at any time. Counsel shall contact the PACER Service Center at 1-800-676 6856 or via the link below to create the new PACER account and to make any necessary arrangements for the waiver. The Clerk is directed to send a copy of this order to Plaintiff, attorney Loevy, the Systems Department of the Northern District of Illinois, and the PACER Service Center at pacer@psc.uscourts.gov.

## STATEMENT

Plaintiff Ahmad Poole, a prisoner at Stateville Correctional Center, brought this action *pro se* under 42 U.S.C. § 1983, alleging deliberate indifferent to his serious medical needs in connection with injuries he sustained during an August 2017 fight with his cellmate. The case was dismissed without prejudice on July 10, 2020, because Plaintiff failed to pay the filing fee. Plaintiff has now paid the filing fee and moves to vacate the Court's dismissal order.

In his motion to vacate, Plaintiff indicates that he did not receive the Court's February 28, 2020 order denying his request to proceed *in forma pauperis* and instructing him to pay the $400 filing fee if he wished to proceed with this action. (*See* Dkt. 15 at pg. 1.) He indicates that he first learned of the Court's February 28, 2020 order when he received the Court's July 10, 2020 dismissal order. (*Id.*) He also indicates that he wishes to pay the filing fee (*id.* at pg. 2), and he has now done so (Dkt. 16). Accordingly, Plaintiff's motion to vacate (Dkt. 15) is granted. The Court's July 10, 2020 dismissal order is vacated and the case is reinstated. The Court now turns to its initial review of Plaintiff's complaint (Dkt. 1).

The Court is required to screen prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. 28 U.S.C. § 1915A; *see Jones v. Bock*, 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoners' complaints in the same manner they review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff's favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

Plaintiff alleges that on August 17, 2017, he was involved in a physical altercation with his cellmate. (Dkt. 1 at pg. 5.) Plaintiff had "obvious injuries" and was taken by Lt. Jaburek to the healthcare unit. (*Id.*) Plaintiff told Lt. Jaburek "something was broke in his neck" because he heard a "popping sound" and felt pain when he walked or moved his head. (*Id.*) When they arrived at the healthcare unit, Lt. Jaburek left Plaintiff outside in the corridor (in the bullpen). (*Id.*) About 25-30 minutes went by and Plaintiff started "hollering" because he was in "severe" pain and needed immediate medical attention. (*Id.*) A few minutes later, Major Sawyer walked by the bullpen and Plaintiff told him he was in a fight, believed "something" in his neck was broken, and he was not being seen by anyone. (*Id.* at pg. 6.) Major Sawyer went into the healthcare unit, told Sgt. Montez about the situation, and came back out and told Plaintiff that "they should be coming to get you to see the doctor." (*Id.*) Another 30 minutes went by and no one came out to help him. (*Id.*) Plaintiff "sent" several correctional officers to the healthcare unit "door" to see what was going on. (*Id.*) Meanwhile, Plaintiff was bleeding from a cut under his eye and his neck was "popping" and "hurting extremely bad." (*Id.*) At some point, Sgt. Montez yelled to Plaintiff that he would be seen, but he had to wait until the "diabetic lines" were done getting their medication. (*Id.*) Plaintiff sat in the bullpen for another 30 minutes before Nurse Tina Tomaras attended to

him. (*Id.* at pg. 7.) Nurse Tomaras examined the cut under Plaintiff's eye and told him he needed stitches. (*Id.*) Plaintiff told her that his neck was making "popping" sounds and that it was very painful. (*Id.*) Plaintiff was escorted to the healthcare unit by Lt. Jaburek and attended to by Dr. Aguinaldo. (*Id.*) Plaintiff explained his injuries and told Dr. Aguinaldo that he had been in a fight and believed "something" in his neck was broken. (*Id.*) Dr. Aguinaldo stitched the cut under Plaintiff's eye while a nurse held his head. (*Id.* at pg. 8.) After Dr. Aguinaldo stitched Plaintiff's eye, he told Plaintiff to "stop faking" about his neck injury. (*Id.* at pg. 8.) Plaintiff asked for an x-ray, and Dr. Aguinaldo told Plaintiff to move his fingers, arms, and legs. (*Id.*) The doctor also asked Plaintiff if he felt numbness, and Plaintiff told him he just felt pain. (*Id.*) Dr. Aguinaldo told Plaintiff he was fine and that the "soreness" would wear off in a couple days. (*Id.*) Dr. Aguinaldo did not provide Plaintiff with a neck brace or any other treatment. (*Id.* at pgs. 8-9.)

Lt. Jaburek then cuffed Plaintiff behind his back, escorted him to the segregation unit, and placed him in a cell without a pillow or any other support for his neck. (*Id.* at pg. 9.) Plaintiff could not sleep because of the pain in his neck and he had to hold his neck in place to avoid it shifting back and forth. (*Id.*)

On August 18, 2017, Plaintiff filed an emergency grievance with Warden Pfister, explaining that his neck had been "broken" in a fight. (*Id.*) Plaintiff was not sent for any type of medical treatment, and Randy Pfister did not respond to the grievance. (*Id.* at pgs. 9-10.)

Over the next two days, the pain got worse and Plaintiff could not eat, sleep, or wash-up, and it was difficult to move. (*Id.* at pg. 10.) Plaintiff told a nurse that the pain had become worse and she indicated she would report that to healthcare and that Plaintiff should be seen. (*Id.*)

On August 19, 2017, Plaintiff was taken to the healthcare unit for a dressing change for his stitches. (*Id.*) Plaintiff was taken to the healthcare unit in restraints and was seen by Nurse Tomaras. (*Id.*) Nurse Tomaras looked at Plaintiff's eye and told the escorting officer to take Plaintiff back to segregation. (*Id.*) Plaintiff tried to tell Nurse Tomaras about his neck pain, but she ignored him and gestured for the officer to take him away. (*Id.*)

On August 21, 2017, Plaintiff was called to the healthcare unit for bloodwork. (*Id.* at pg. 11.) Plaintiff told Nurse Stephanie about his neck problems. (*Id.*) Nurse Stephanie and "Paige" told Plaintiff they "felt" the "popping" in his neck, but that there was no x-ray technician available. (*Id.*) Plaintiff returned to segregation. (*Id.*) On August 22, 2017, Plaintiff received a pass for an "x-ray" but the appointment was cancelled. (*Id.*)

On August 24, 2017, Plaintiff was called to the healthcare unit to have his stitches removed. (*Id.*) A nurse removed the stitches and Plaintiff told Dr. Aguinaldo that he continued to experience problems with his neck. (*Id.*) Dr. Aguinaldo told Plaintiff to "stop acting" and that he was fine. (*Id.*) Plaintiff was taken back to segregation. (*Id.* at pg. 12.)

On August 25, 2017, eight days after the fighting incident, Plaintiff was taken for an x-ray of his neck. (*Id.*)

On August 28, 2017, three days after the x-ray, he received a pass for a follow-up with Dr. Aguinaldo. (*Id.*) Dr. Aguinaldo told Plaintiff that the x-ray showed he had a fracture in his neck, but that it was not bad and would not require surgery. (*Id.*) Dr. Aguinaldo did not provide any treatment for Plaintiff's neck and Plaintiff returned to segregation. (*Id.*)

On August 30, 2017, Plaintiff met with Dr. Obaisi. (*Id.* at pg. 13.) According to Plaintiff, Dr. Obaisi had no idea why Plaintiff was there to see him. (*Id.*) Dr. Obaisi reviewed Plaintiff's x-ray and related medical information and told Plaintiff that he was being sent immediately to the emergency room at St. Joseph's hospital. (*Id.*) A number of correctional officers arrived at Dr. Obaisi's office and the doctor told them to call an ambulance and get Plaintiff a wheelchair. (*Id.*) C/O Norman told Dr. Obaisi that Plaintiff could walk and refused to get a wheelchair. (*Id.*) Dr. Obaisi put Plaintiff in a neck brace. (*Id.*) C/O Norman shackled Plaintiff's legs and hands in a black-box and forced Plaintiff to walk to the van. (*Id.* at pg. 14.) Plaintiff claims that he was in "extreme pain" the entire ride. (*Id.*) When he arrived at the hospital, Plaintiff was given a CT-scan and told by doctors that he had a "serious" injury and would need to be immediately transported to UIC for surgery. (*Id.*) C/O Norman told the doctors that Plaintiff did not need an ambulance. (*Id.*) Plaintiff was transported on the prison van. (*Id.*) Plaintiff claims that the van was driven slowly and the driver applied the gas "a lot," which made the drive "jerky and painful." (*Id.* at pgs. 14-15.)

When Plaintiff arrived at UIC, he was given additional tests (including an MRI) and then underwent surgery. (*Id.* at pgs. 15-16.)

Plaintiff names Dr. Aguinaldo, Lt. Jaburek, C/O Norman, Nurse Tina Tomaras, and Warden Randy Pfister as Defendants in this action. (*Id.* at pg. 1.)

Plaintiff's factual allegations are sufficient, at least at this stage, to state a plausible claim of deliberate indifference to a serious medical need. "Prison officials violate the Eighth Amendments proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a claim based on deliberate indifference, an inmate must first show that "his medical condition is 'objectively, sufficiently serious.'" *Greeno*, 414 F.3d at 652 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). He must then show that prison officials were deliberately indifferent to that condition. *Id.* (quoting *Farmer*, 511 U.S. at 834) (citation and quotation marks omitted). The concept of deliberate indifference encompasses the refusal of effective treatment, *Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011), knowing delay of treatment to the point that an injury is exacerbated or pain is unnecessarily prolonged, *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010), and erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards, *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016). Plaintiff's description of the neck injury (and related pain) he suffered from the August 17, 2017 fight with his cellmate sufficiently alleges an objectively serious medical need. Plaintiff has also alleged facts suggesting that the Defendant correctional officers/medical personnel may have been deliberately indifferent to his neck injury (and the related pain).

Although the complaint arguably states a medical deliberate indifference claim, summonses shall not issue at this time. The complaint on file (Dkt. 1) is dismissed without prejudice. Due to the potential complexity of the medical issues presented in this case, the Court finds that the recruitment of counsel is warranted. The Court recruits attorney Loevy to represent Plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rules. *See Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) (when deciding whether to recruit counsel, directing district court to consider the severity of inmate's medical condition and the difficulty of conducting advance-stage litigation tasks that involve medical issues); *Perez v. Fenoglio*, 792 F.3d 768, 784 (7th Cir. 2015) (same).

Counsel shall file an appearance and an amended complaint by the aforementioned dates. If counsel believes that filing an amended complaint would be inconsistent with his Rule 11 obligations, he should so inform the Court.

Date: 8/26/20     /s/ Charles Norgle