THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AHMAD POOLE (K95348), ) | |
| ) | |
| Plaintiff, ) | Case No. 20-CV-0014 |
| ) | |
| v. ) | Honorable Manish S. Shah |
| ) | |
| DR. E. AGUINALDO, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# Exhibit 18

April 27, 2023

Maria Makar
*LOEVY & LOEVY*
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607

      **RE:** *Ahmad Poole v. Dr. Evaristo Aguinaldo, Derek Jaburek, Alphonso Norman, and Tina Tomaras*

Dear Ms. Makar,

    My report in the above-referenced matter follows:

Assignment:

    I am asked to review written materials regarding the aforementioned case and render an opinion on the medical care given to Mr. Poole from the date of August 17, 2017, regarding his medical care at Stateville Correctional Center on and around that time.

    I have also reviewed the previous report rendered by Dr. Beatty (Neurosurgeon, previous medical expert opinion).

Qualifications:

    I am a licensed physician practicing as a hospitalist at Community Hospital in Munster, IN. I am board certified in Internal Medicine. I have not previously performed duties as a medical expert. I have, however, participated in several Indiana Medical Review Panels reviewing physicians' care in cases of malpractice claims.

    My C.V. is attached as an exhibit.

Indiana Medical Review Panels:

- *Jefffey Haines v. L Falotico DO, et. al* (IDOI Claim 1021188)

- *Lenda Dowdy, Personal Representative of the Estate of James Dowdy v. Michael G. Moore, M.D., et al.* (IDOI Claim 1020472)

Material reviewed:

- Fourth Amended Complaint, *Poole v. Dr. Evaristo Aguinaldo, et al.*, 20-C-00014
- Grievance Documents IDOC 1-7
- Physician's note 8/17/2017 Doctor A. RTP 0749
- 03.16.22–8.17.17 to 8.30.17 medical notes
- Dr. Obaisi referral document Doctor A. RTP 0431
- Document transfer summary IDOC 08/30/2017 Poole 008-009
- Dr. Obaisi referral to St. Joseph's Doctor A. RTP 0751, Doctor A. RTP 0431

- St. Joseph's Physician Evaluation Doctor A. RTP 0952-0956
- Neck pain a ten at St. Joseph's 08/30/2017 Doctor A. RTP 0933
- UIC Admission documents Doctor A. RTP 0964-0968
- UIC Radiology reports Doctor A. RTP 1037-1041
- Wexford approval of surgery post-op visit Poole 078
- Medical records after surgery Doctor A. RTP 0865, Poole 009, Poole 053-056
- One year post op Poole 083
- X ray reports Doctor A. RTP 0718-0723
- Dr. Obaisi note 08/30/2017 (78000-019) 000256
- Dr. Evaristo Aguinaldo's Answers to Plaintiff's First Set of Requests for Admission
- Deposition of Dr. Aguinaldo
- Deposition of Dr. Mehta
- Deposition of Ahmad Poole
- Plaintiff Ahmad Poole's deposition transcript
- Dr. Ankit Mehta's deposition transcript
- Dr. Aguinaldo's deposition transcript
- Previous expert report rendered by Dr Beatty

The events:

On Thursday August 17, 2017, Mr. Poole had a physical altercation in his cell where he claims to have had his hair pulled, being placed in a headlock, and throttled by his cellmate before freeing himself. The conflict resulted in a laceration around his right eye requiring sutures. In addition, Mr. Poole complained of neck pain following the altercation. He notes that he informed several medical and nonmedical staff members regarding his neck symptoms. He described the pain as severe with associated symptoms of pain extending to his lower spine, weakness in his neck, 'popping sounds', etc. The physician, Dr. Aguinaldo, did not document neck exam at that time. No x-rays were performed at that time. C-collar was not placed at that time. The patient remained undiagnosed.

On August 19, Mr. Poole received a wound check for the eye laceration. Mr. Poole maintains that he continued to have neck issues. No x-rays were performed, c-collar was not placed at that time.

On Monday, August 21, Mr. Poole had blood drawn for lab work.

On Tuesday, August 22, Mr. Poole had several x-rays ordered including c spine films.

On Thursday, August 24, Mr. Poole had the sutures removed.

On Friday, August 25, Mr. Poole had his x-rays completed.

The note from Sunday, August 27 noted the positive findings on neck x-rays for C3-4 subluxation.

On Wednesday, August 30, Mr. Poole was referred to medical director Dr. Obaisi. This encounter documents neck exam. Mr. Poole was provided with c-collar at that time and sent to St. Joseph's Hospital for CT neck. CT neck was positive for C3-4 subluxation, right C3 facet fracture with perching on C4 facet. Mr. Poole was transferred to UI Health under an accepting neurosurgery team. Subsequent MRI confirmed diagnosis it was recommended that Mr. Poole have surgery to stabilize his spinal subluxation.

On September 6, 2017, Mr. Poole underwent surgical intervention to stabilize his injury. Since this time the patient has experienced chronic pain requiring medical management and physical therapy.

I hold the following opinions to a reasonable degree of medical certainty:

Mr. Poole did not have neck issues prior to August 17, 2017.

On August 17, 2017, Mr. Poole experienced neck trauma. He expressed concern for his neck to personnel available at the facility. Mr. Poole's history of the trauma, followed by complaints of pain in the neck with associated pain radiating to his spine, weakness holding his head, different sensations such as 'popping' are all symptoms concerning for spinal injury. Acutely, spinal subluxation causes can become worse and lead to catastrophic neurological injury. Chronically, spinal subluxation can lead to slowly worsening spinal issues and or pain. The associated facet fracture will acutely cause significant pain.

In these cases, the standard of care requires stabilizing the spine with a c-collar and requesting appropriate imaging in a timely manner. The event occurring on August 17 should have initiated a thorough workup of Mr. Poole's injuries at that time. The delay in the x-ray led to a cascade of delays that precluded Mr. Poole from receiving necessary surgical intervention for his neck injury until September 6, 2017.

The delay in diagnosis and treatment likely caused Mr. Poole unnecessary pain as a c-collar is both protective (to prevent worsening of the injury) and therapeutic (as immobilizing the injury helps reduce pain).

Mr. Poole continues to have pain requiring ongoing medical management. Earlier intervention for Mr. Poole's injury may well have improved his postoperative outcome.

It is my opinion within a reasonable degree of medical certainty that Dr. Aguinaldo breached the minimal standard of care as below:

Dr. Aguinaldo examined the patient on August 17, 2017. Given the history of present illness and the patient's subjective complaints, Mr. Poole should have received expedited imaging of his neck and should have immediately been provided with a stabilizing c-collar until such time as such imaging could be obtained. The delay of obtaining imaging of Mr. Poole's neck until August 25 breaches the standard of care. Failing to address the positive findings on cervical spine x-rays completed on August 25 until August 30 breaches the standard of care.

Dr. Aguinaldo also breached the standard of care with the lack of documentation in the medical record. Specifically, the "Subjective" or "S" portion of the record should document Mr.

Poole's physical complaints at the time of the encounter. The "Objective" or "O" portion of the record should document pertinent positive and pertinent negative findings per the physician's physical examination. (Physician's note 8/17/2017 Doctor A. RTP 0749.)

The delays described above caused an unnecessary delay in treatment. A delay in treatment gives said injury time to worsen and thus, possibly affects the surgical outcome as well as subjects Mr. Poole to sequela of chronic pain. When a bone fracture worsens from delays in treatment, or the bones are misaligned due to a failure to stabilize, the structural integrity of the tissue could be impacted. Such worsening or misalignment will cause the patient more pain and limitations on daily activities. It is my opinion that Mr. Poole's outcome would have been better had his initial encounters with Dr. Aguinaldo been different.

Best,

*JOHN G DAVIS M.D.*
JOHN G DAVIS M.D. (Apr 27, 2023 20:38 CDT)
John G. Davis, MD

# Final Expert Report - Dr. Davis

Final Audit Report                                                                 2023-04-28

| Created: | 2023-04-28 |
| --- | --- |
| By: | Maria Makar (makar@loevy.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAbliwv5ROb7zElfudr-FzLmdaEhX7a7Jf |

## "Final Expert Report - Dr. Davis" History

- Document created by Maria Makar (makar@loevy.com)
  2023-04-28 - 1:22:46 AM GMT

- Document emailed to jaydavis12@msn.com for signature
  2023-04-28 - 1:23:13 AM GMT

- Email viewed by jaydavis12@msn.com
  2023-04-28 - 1:30:29 AM GMT

- Signer jaydavis12@msn.com entered name at signing as JOHN G DAVIS M.D.
  2023-04-28 - 1:38:51 AM GMT

- Document e-signed by JOHN G DAVIS M.D. (jaydavis12@msn.com)
  Signature Date: 2023-04-28 - 1:38:53 AM GMT - Time Source: server

- Agreement completed.
  2023-04-28 - 1:38:53 AM GMT

Adobe Acrobat Sign